IN THE CIRCUIT COURT OF SEBASTIAN COUNTY, ARKANSAS
FORT SMITH DISTRICT
CIVIL DIVISION ⅴ

ALECHIA REEVES                                                        PLAINTIFF

**CV- 17- 0566**

vs.                                        CASE NO. CV-17-_____

TRI-HILL TURF CARE, INCORPORATED and                     DEFENDANTS
TRI-HILL PEST CONTROL, INCORPORATED

THE STATE OF ARKANSAS TO DEFENDANT:        TRI-HILL PEST CONTROL, INCORPORATED
                                           Daniel L. Hill, Agent
                                           1308 S. Zero
                                           Fort Smith, AR 72901

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) -- or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas -- you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are:   Joe D. Byars, Jr., BYARS & HALL, P.L.L.C., 401 Lexington Avenue, Fort Smith, Arkansas 72901.

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

ADDRESS OF THE CLERK'S OFFICE:        DENORA COOMER, CIRCUIT CLERK
Sebastian County Circuit Clerk
Sebastian County Courthouse
901 S. B Street
Fort Smith, AR 72901               BY: _____ D.C.
                                            (SEAL)

                                   Date: _____ JUN 0 6 2017 _____

No.\_\_\_\_\_       **This summons is for TRI-HILL PEST CONTROL, INCORPORATED**

### PROOF OF SERVICE

☐       I personally delivered the summons and complaint to the individual at _____ _____ [place] on _____ [date]; or

☐       I left the summons and complaint in the proximity of the individual by _____ _____ after he/she refused to receive it when I offered it to him/her; or

☐       I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

☐       I delivered the summons and complaint to _____ [name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____ [name of defendant] on _____ [date]; or

☐       I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt; or

☐       I am the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐       OTHER: _____.

☐       I was unable to execute service because _____ _____.

My fee is $_____.

**To be completed if service is by sheriff or deputy sheriff:**

Date:_____       SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
Printed name:_____

**To be completed if service is by person other than a sheriff or deputy sheriff.**

Date:_____       By:_____.
Printed name:_____

Address: _____
Phone:_____

Subscribed and sworn to before me this date:_____

_____
                                                    Notary Public

My commission expires: _____

Additional information regarding service or attempted service:_____ _____

IN THE CIRCUIT COURT OF SEBASTIAN COUNTY, ARKANSAS
FORT SMITH DISTRICT
CIVIL DIVISION

FILED
FT. SMITH DIST
2017 JUN -6 A 9: 29
lang- faircld
CIR. CLERK SEB. CO.

ALECHIA REEVES                                                           PLAINTIFF

VS.                    **CV-17-0566**

CASE NO. 17-_____

TRI-HILL TURF CARE, INCORPORATED, and
TRI-HILL PEST CONTROL, INCORPORATED                                     DEFENDANTS

<u>COMPLAINT</u>

Comes now the Plaintiff, Alechia Reeves, by and through her attorney, Joe D. Byars, of Byars & Hall, PLLC, and for her Complaint against the Defendants Tri-Hill Turf Care, Incorporated, and Tri-Hill Pest Control, Incorporated, states and alleges as follows:

1.    The Plaintiff, Alechia Reeves, is a female citizen and resident of Fort Smith, Arkansas, who was previously employed by the Defendants, Tri-Hill Turf Care, Incorporated, and Tri-Hill Pest Control, Incorporated (collectively "Tri-Hill"), until her employment was involuntarily terminated by Tri-Hill on October 27, 2015.

2.    This is an action for wrongful termination of employment, arising from the Defendants' violation of the Arkansas Civil Rights Act, and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e to 2000e-17.

3.    Tri-Hill Turf Care Incorporated is an Arkansas for profit corporation doing business in Fort Smith, Arkansas, whose agent for service of process is Daniel L. Hill, 3021 Towson Avenue, Fort Smith, Arkansas 72901.  Tri-Hill Turf Care, Incorporated regularly employed no fewer than ten (10) employees at all relevant times.

1

4. Tri-Hill Pest Control, Incorporated is an Arkansas for profit corporation doing business in Fort Smith, Arkansas, whose agent for service of process is Daniel L. Hill, 3021 Towson Avenue, Fort Smith, Arkansas 72901. Tri-Hill Turf Care, Incorporated regularly employed no fewer than ten (10) employees at all relevant times.

5. Tri-Hill Turf Care, Incorporated and Tri-Hill Pest Control, Incorporated shared top-level management, who made employment decisions for both companies, shared offices and employees, and should be held to constitute joint employers of the Plaintiff for all purposes. Throughout this Complaint, both Defendants are collectively called "Tri-Hill".

6. Tri-Hill subjected Reeves to a sexually hostile work environment, and created, fostered, and maintained an atmosphere of sexual discrimination and harassment.

7. When Reeves complained to the owner of Tri-Hill that one of her coworkers sent her sexually explicit text messages, Tri-Hill terminated her employment because of her gender and in retaliation for conduct which is protected by Title VII and the Arkansas Civil Rights Act.

8. Reeves seeks injunctive relief, compensatory and punitive damages and reimbursement of her costs of litigation, including her attorney's fees.

<u>Jurisdiction and Venue</u>

9. The acts giving rise to the Plaintiff's Complaint occurred in Fort Smith, Sebastian County, Arkansas. At all material times, Tri-Hill Turf Care, Incorporated, and Tri-Hill Pest Control, Incorporated was an Employer of Reeves within the meaning of

2

42 U.S.C. §20003(b) and the Arkansas Civil Rights Act; and Reeves was an employee of Tri-Hill.

### EEOC Charge

10. On March 11, 2016, Alechia Reeves filed a Charge of Discrimination against Tri-Hill with the U.S. Equal Employment Opportunity Commission. The EEOC designated her charge as Charge Number 493-2016-00873 (the "Charge of Discrimination").

11. In her Charge of Discrimination, Reeves asserted that she was wrongfully discharged from her employment when she complained to her management about being subjected to unwelcome sexual harassment.

12. Reeves filed her Charge of Discrimination within 180 days of the unlawful practices alleged herein.

13. The EEOC issued Reeves a Notice of Right to Sue with respect to her Charge of Discrimination on March 29, 2017, which was received by Ms. Reeves several days later.

14. Reeves files this Complaint within 90 days of her receipt of the Notice of Right to Sue letter issued by the EEOC.

### Factual Allegations

15. Reeves began her employment with Tri-Hill on or about October of 2014.

16. Ms. Reeves worked in the office as an accounting clerk or assistant, where she worked five days per week with a rate of pay of $11.50 per hour.

17. After one of the employees left her position, Ms. Reeves was asked to serve as the "business" or "office" manager, while the business hired another significantly younger woman to work with her.

3

18.    One day in October of 2015, Ms. Reeves accidentally opened the new employee's paycheck, which had been placed on her desk by another employee. She did not recognize that the check was not hers until after the envelope was opened. When she opened the check, she recognized that the new employee was earning over $16.00 per hour, and let the owner of Tri-Hill know she was not happy that the new employee -- whom Ms. Reeves was training -- was earing more money than her.

19.    The owner of Tri-Hill told Ms. Reeves that he would be giving her a raise, which she would see on her next paycheck.

20.    At about the same time as the discussion concerning her rate of pay, Reeves told the owner that she was having difficulty with a lawn tech employee sending unwelcome and sexually related text messages.

21.    The following week (on a Monday), none of the employees would speak with Reeves.

22.    The next day (Tuesday), the owner of Tri-Hill told Reeves that things were "not working out" and that Reeves was terminated.

23.    Reeves was terminated from her employment because she opposed the sexually related text messages, and reported the same to the owner.

24.    Prior to her job termination, Ms. Reeves had not been subjected to disciplinary action in connection with her employment.

25.    Tri-Hill obviously received the report which Reeves made about the unwanted sexually related text messages from a Tri-Hill employee.

<u>Retaliation in Violation of Title VII</u>
<u>and the Arkansas Civil Rights Act.</u>

26.     But for Reeves' report of the sexually related text messages made unlawful by Title VII and the Arkansas Civil Rights Act, Tri-Hill would not have terminated her employment.

27.     Tri-Hill retaliated against Reeves because she opposed actions made unlawful by Title VII and the Arkansas Civil Rights Act.

28.     Tri-Hill acted with malice or with reckless indifference to Reeves' protected rights when it terminated her employment.

29.     As a direct and proximate result of Tri-Hill's unlawful retaliation against Reeves, Reeves has suffered and continues to suffer loss of income, loss of benefits, emotional distress, and emotional pain and suffering, in an amount to be proven at trial.

30.     As a direct and proximate result of Tri-Hill's unlawful retaliation, Reeves has been compelled to incur attorney fees and expenses of litigation, for which Tri-Hill is liable.

WHEREFORE, Reeves respectfully requests:

a)      that Reeves be awarded damages to cover all lost income, lost health care, and other benefits she would have received but for the unlawful actions taken against her;

b)      that Reeves be awarded general damages to compensate her for the emotional injuries, pain, and suffering, and other losses and injuries suffered as a result of the unlawful actions taken against her;

5

c)      that Reeves be awarded punitive damages against Tri-Hill as a consequence of its

        wilful, malicious, reckless or intentional conduct;

d)      that Reeves be granted trial by jury;

e)      that Reeves be awarded her attorney's fees and expenses of litigation; and

f)      such other relief as may be just and proper.

                        Respectfully submitted,

                        ALECHIA REEVES, *Plaintiff*

                        Joe D. Byars, P.A., Ltd.
                        BYARS & HALL, PLLC
                        401 Lexington Avenue
                        Fort Smith, AR 72901
                        Tel: (479) 494-1800
                        Fax: (479-783-0694)

                        BY:

                            Joe D. Byars, Jr.
                            ABN: 95107

                        Counsel for Plaintiff

6

Joe D. Byars, Jr.
Byars & Hall, P.A.
401 Lexington Avenue
Fort Smith, Arkansas 72901



**CERTIFIED MAIL**

7013 2250 0001 3305 6448



$6.77
US POSTAGE
FIRST-CLASS
062S000956354
72901

C. 37
Bus. Closed
6/10

Tri-Hill Pest Control, Incorporated
Daniel L. Hill, Agent
1308 S. Zero
Fort Smith, AR 72901

72901SB436 C037

**SPMI**

1701 Main St
Van Buren, AR 72956

Phone  479-474-7752
FAX:  479-922-8007
email: bethany@nybhprofessionals.com

September 28, 2016

Virginia Pollard,
Equal Employment Opportunity Commission
Little Rock Area Office
820 Louisiana, Suite 200
Little Rock, Arkansas 72201

Dear Ms. Pollard:

Reference:    Alechia Reeves
Charge No.:   493-2016-00873

The following documentation is the employers' response to the above EEOC charge, prepared by SPMI on behalf of Tri-Hill Turf Care, Inc. to the above complaint of employment discrimination. SPMI is a Human Resource Outsourcing Company who performs Human Resource Consulting, Payroll Services and Workers' Compensation on behalf of and requested by Tri-Hill Turf Care, Inc.

**Section 1: Position Statement**

The allegations that Alechia Reeves' has made regarding her belief that she was discharged in retaliation for of making a complaint of sexual harassment are false. After thoroughly investigating the EEOC Charge initiated by Ms. Reeves, and reviewing all supporting documents attached, Tri-Hill Turf Care, Inc.'s position remains unchanged regarding the discharge of Alechia Reeves for not being a good fit for the position because of disruptive and uncooperative behavior, yelling and hanging up on customers, and opening sealed payroll check envelopes of employees without authorization, as evidenced by the termination/separation notice and copies of corrective counseling issued prior to termination. *[Attachment #1- Termination Notice & Attachment #2 – Corrective Counselings 09/30/15 & 10/22/15]*

We acknowledge the individual's right to be treated fairly without discrimination based upon sex; however, the employer has a reasonable expectation to employ individuals who will cooperate and follow the instructions of management, not overstep their level of authority, provide good customer service, and work with others to maintain a cohesive team environment.

It is Tri-Hill Turf Care, Inc.'s position that Ms. Reeves was aware that her job was in jeopardy in advance of dismissal. Ms. Reeves had been issued corrective counselings on 09/30/15 for "General texting and causing turmoil/disruption amongst employees during work hours" and 10/22/15 for "opening employee's paycheck envelope, leaving work without notice, and texting field employees non-work related messages during work hours." On October 22, 2015, it was reported by Wayne Harbour, Tech that Ms. Reeves had been texting him. Then after lunch, the phones were ringing and it was discovered that Ms. Reeves had left the building without approval. Anita Dunn, newly hired Office Manager, reported that Ms. Reeves opened Ms. Dunn's sealed payroll check envelope, looked at the check then threw it at Ms. Dunn. Ms. Reeves became upset and hung up on customer phone calls. Ms. Reeves is believed to have left the building shortly after this. Danny Hill, Owner called Ms. Reeves back to the office to meet

with him. Ms. Reeves admitted to opening sealed payroll check envelopes, texting co-workers and hanging up on customers. Mr. Hill issued a corrective counseling which Ms. Reeves refused to sign and Ms. Reeves was sent home with pay for the remainder of the day, Thursday, October 22, 2015, as a "decision day" for her to decide if she could return to the office and work in a professional manner. Ms. Reeves worked without incident on Friday, October 23, 2015 and Monday, October 26, 2015. On Tuesday, October 27, 2015, Mr. Hill left the building to run errands and upon his return he walked in on Ms. Reeves yelling at Ms. Dunn. Mr. Hill met with Ms. Reeves told her "this was not working out and she needed to leave." *[Attachment #1 – Termination Notice, Attachment #2 – Corrective Counselings 09/30/15 & 10/22/15, Attachment #3 – Statement from Danny Hill and Anita Dunn]*

The receipt of this charge has prompted Tri-Hill Turf Care, Inc. to investigate the claims made by Ms. Reeves since she failed to report any unwanted, unwelcome or harassing communication and/or contact during her employment. Statements obtained from the male employees during this investigation indicates that all parties including Ms. Reeves engaged in consensual communication via text messages and sending/receiving nude photographs. It further indicates that Ms. Reeves was the aggressor and frequently touched, poked and made suggestive comments to and about the male employees including Gary Martin, who she names as the harassing party in this charge. However, no one including Ms. Reeves reported that the contact and communication was unwanted, unwelcome or harassing in nature. In fact, Ms. Reeves has attempted to reach out to these men and continued to stay in contact with a couple of these men since her termination of employment. In one case, Ms. Reeves was in contact with one of these men as recently as Tuesday, September 20, 2016. In his statement Tony Botello, Tech stated that Ms. Reeves went to his home on Tuesday, September 20, 2016 and "asked if he had been talked to or heard anything about some naked pictures at work. Mr. Botello told her, 'I had no idea what she was talking about'. She assured me that nothing involved me and not to pay attention to anything because it wasn't true." *[Attachment #4 – Employee Statements received September 21, 2016]*

In summary, Tri-Hill Turf Care, Inc.'s position remains unchanged regarding the discharge of Ms Reeves not being a good fit for the position because of disruptive and uncooperative behavior, yelling and hanging up on customers, and opening sealed payroll check envelopes of employees without authorization, as evidenced by the termination/separation notice and copies of corrective counseling issued prior to termination. *[Attachment #1- Termination Notice & Attachment #2 – Corrective Counselings 09/30/15 & 10/22/15]*

In light of statements obtained in the course of this investigation it is Tri-Hill Turf Care, Inc.'s position that Ms. Reeves has made this complaint with 'unclean hands' and has committed perjury by making false statements as to her position/stature within the company, misrepresentation of several key facts including omitting her disruptive/hostile behavior towards Ms. Dunn and others, 'accidentally' opening sealed envelopes that she admitted were opened intentionally without authorization and her involvement in continuing to reach out to male employees after her dismissal.

*There were no reports of Sexual Harassment received by Tri-Hill Turf Care, Inc. or SPMI.*

Cordially,

Bethany Taylor, M.A., SHRM-SCP, SPHR, CELS
SPMI Asst. Human Resource Director
On behalf of Tri-Hill Turf Care, Inc.

**Section I-2: Request for Information**

1.   Give the correct name and address of the facility named in the charge.

> **Tri-Hill Turf Care, Inc.**
> **1308 Zero St**
> **Fort Smith, AR 72901**

2.   State the total number of persons who were employed by your organization during the relevant period. Include both full and part-time employees. How many employees are employed by your organization at the present time?

> **During the relevant period from October 1, 2015 to October 27, 2015, Tri-Hill Turf Care, Inc. employed a total of 10 full and part-time employees. As of September 20, 2016, Tri-Hill Turf Care, Inc. employs a total of 10 full and part-time employees.**

3.   Supply an organizational chart, statement, or documents which describe your structure, indicating, if any, the relationship between it and superior and subordinate establishments within the organization.

> **The organizational charts for Tri-Hill Turf Care, Inc. are provided. [Attachment #5]**

4.   Supply a statement or documents which identify the principal product or service of the named facility.

> **Tri-Hill Turf Care, Inc. performs treatment of turf and ornamental products for the management of pest and nutritional requirements on desired plants in residential and commercial landscapes. [Attachment #6]**

5.   State the legal status of your organization, i.e., corporation, partnership, tax-exempt non-profit, etc. If incorporated, identify the state of incorporation.

> **The legal status of Tri-Hill Turf Care, Inc. is a S Corporation within the State of Arkansas**
> **[Attachment #7]**

6.   State whether your organization has a contract with any agency of the federal government or is a subcontractor on a project which receives federal funding. Is your organization covered by the provisions of Executive Order 11246? If your answer is yes, has your organization been the subject of a compliance review by the OFCCP at any time during the past two years?

> **Tri-Hill Turf Care, Inc. has contracts with the Department of Veterans' Affairs National Cemetery Administration on a project which receives federal funding. Tri-Hill Turf Care, Inc. is covered by the provisions of Executive Order 11246**

and has not been subject to a compliance review by the OFCCP during the past two years.

7.  Submit a written notice statement on each of the allegations of the charge, accompanied by documentary evidence and/or written statements, where appropriate. Also include any additional information and explanation you deem relevant to the charge.

Regarding Alechia Reeves statements as noted on the Charge of Discrimination:

*"I began my employment with Tri-Hill Lawn Care and Pest Control in approximately October of 2014. My initial job position was that of an office and accounting clerk, where I worked in the office five (5) days a week, with a rate of pay of $11.50 per hour.*

**This statement is not entirely correct.**

*According to our records, Ms. Reeves was hired to perform Secretarial duties similar to those of a Receptionist on October 06, 2014 at the rate of $10.50 per hour. Ms. Reeves was given a raise on 01/04/15 to $11.00 per hour. Ms. Reeves was given a raise on 05/03/15 to $11.50 per hour and a final raise was given on 10/18/15 to $12.00 per hour. [Attachment #8 -- Tri-Hill Turf Care, Inc. Employment file for Alechia Reeves]*

*"In approximately, August of 2015 one of the employees of the business left, and I was asked to serve in the 'office manager' position.*

**This statement is incorrect.**

*According to our records, former Office Manager, Jamie McCord-Byars quit effective September 28, 2015. Richard Bernard, Service Manager was assigned as 'acting' Office Manager during the transition and training period. Ms. McCord-Byars' replacement, Anita Dunn, Office Manager was hired and began employment 7 days later on October 05, 2015. [Attachment #3 -- Statement of Danny Hill]*

*"I did begin to serve in such capacity, while the business also hired another younger lady to work with me. I spent time in the office manager position essentially training the new employee for the same job".*

**This statement is incorrect.**

*According to our records and a statement by Danny Hill, Ms. Reeves was never assigned to serve as the Office Manager. Mr. Bernard was the 'acting' Office Manager during the transition/training period. Anita Dunn was hired as Office Manager 7 days after the former Office Manager quit. Ms. Dunn was not hired to work with Ms. Reeves. Ms. Dunn was hired to supervise Ms. Reeves. The extent of Ms. Reeves training of Ms. Dunn was to show Ms. Dunn the current office processes as Ms. Reeves had been trained. [Attachment #3 -- Statement of Danny Hill]*

*"One day in October 2015, I accidentally opened the new employee's check, and saw the new employee was earning more than myself, and had a rate of pay of over $16.00 per hour."*

**This statement is not entirely correct.**

*According to statement by owner, Danny Hill, Ms. Reeves admitted to purposely opening sealed payroll check envelopes of several employees including Mr. Bernard, Mr. Hill and Ms. Dunn. [Attachment #3 – Statement of Danny Hill]*

*According to a statement by Office Manager, Anita Dunn, Ms. Reeves had distributed all sealed payroll check envelopes into the employees' boxes except for Ms. Dunn's. Ms. Reeves walked to Ms. Dunn's desk with the envelope, leaned over Ms. Dunn to get her letter opener, and opened the sealed envelope. Ms. Reeves then looked at the payroll check before throwing it to Ms. Dunn. [Attachment #3 – Statement of Anita Dunn]*

*According to our records, Ms. Dunn was hired to a supervisory position at the rate of $16.25 per hour, which was the ending hourly rate of the previous Office Manager. Ms. Dunn had many years of business experience, previously attended college for Business Management and was assigned job duties requiring supervisory skills and independent judgment. [Attachment # 9 – Anita Dunn Job Duties and Resume]*

*Ms. Reeves had no previous business office experience or advanced education prior to her employment with Tri-Hill Turf Care, Inc. and was assigned job duties requiring basic secretarial skills similar to a Receptionist. [Attachment #10– Alechia Reeves Job Duties and Employment Application]*

*"I let the owner know I was not happy to have found the new employee was earning more money than myself. The owner stated that he would be giving me a raise, which should appear on my next check."*

**This statement is incorrect.**

*According to our records and a statement by owner, Danny Hill, Ms. Reeves had been given periodic merit raises throughout her employment. The most recent merit raise from $11.50 to $12.00 per hour was effective 10/18/15. [Attachment #8 – Alechia Reeves Employee File; Attachment #3 – Statement of Danny Hill]*

*According to the a statement by Mr. Hill, on October 22, 2015 it was discovered that Ms. Reeves had left the building without permission and he called her back to the office to meet with him over the incidents reported earlier that day. Ms. Reeves was upset because Ms. Dunn was hired as the Office Manager and told Mr. Hill she wanted to be the Office Manager. Mr. Hill explained to Ms. Reeves that she did not have the KSAOs needed for the Office Manager position. Mr. Hill asked about opening sealed payroll check envelopes. Ms. Reeves admitted to intentionally opening the sealed payroll check envelopes of several employees including Mr. Bernard, Mr. Hill and Ms. Dunn. Mr. Hill asked about texting employees during work hours and hanging up on customers. Ms. Reeves admitted to texting co-workers during work hours and hanging up on customers. Mr. Hill issued a corrective counseling to Ms. Reeves for her conduct and sent her home for the remainder of the day as a paid 'decision day' for her to decide if she could work professionally in the office. [Attachment #3 – Statement of Danny Hill]*

*"At approximately the same time, I advised the owner that I was having some difficulty with unwelcome and sexually related text messages from one of the lawn tech's, (Gary Martin).*

This statement is incorrect.

*According to the statement by Danny Hill, Ms. Reeves never reported any unwanted and unwelcome behavior or text messages from Gary Martin to Mr. Hill. [Attachment #3 – Statement of Danny Hill]*

*According to our records, Ms. Reeves received a copy of the Workplace Harassment policy, the Employee Handbook upon hire and attended annual Harassment training on 08/24/15 all of which clearly explains what harassment is and the way to report harassment. [Attachment #11 – Copy of signed receipt of Workplace Harassment and all policies contained in the Employee Handbook; Harassment and Drug Free Workplace Training Sign in sheet 08/24/15 - Copy of Training Presented]*

*According to the statement by Danny Hill, the first report of non-work related texting between Ms. Reeves and three (3) male employees was on 09/30/15. Mr. Hill met with the employees' and all parties, including Ms. Reeves, admitted to consensually participating in texting during work hours and all parties were issued corrective counseling for the same offense - "General texting and causing turmoil/disruption amongst employees during work hours". Ms. Reeves' counseling was issued on 09/30/15 and Mr. Hill issued corrective counselings on 10/01/15 at 7:15 a.m. to Mike Sarles, Tech; Gary Martin, Tech; and Wayne Harbour, Tech. [Attachment #3 – Statement of Danny Hill and corrective counseling reports for 10/01/15]*

*During her employment with Tri-Hill Turf Care, Inc., Ms. Reeves met with Mr. Hill on two (2) occasions (09/30/15 & 10/22/15) and received corrective counselings for texting co-workers during work hours. All parties including Ms. Reeves admitted to consensual participation in texting during work hours.*

*"The following week, (on Monday) no one would speak with me. On Tuesday, Danny Hill, one of the owners, told me that it was "not working out", and I was fired."*

This statement is correct.

*According to a statement by Danny Hill, Ms. Reeves was sent home for the remainder of the day Thursday, October 22, 2015 as a paid 'decision day' for her unprofessional behavior, opening employees' sealed payroll check envelopes, texting co-workers and leaving the premises without permission. Mr. Hill stated that Ms. Reeves worked without incident on Friday, October 23, 2015 and Monday, October 26, 2015. On Tuesday, October 27, 2015, Mr. Hill left the office to run some errands and when he returned to the office later that morning, he witnessed Ms. Reeves yelling at Ms. Dunn at which point Mr. Hill asked to speak with Ms. Reeves. Mr. Hill told Ms. Reeves "this was not working out and you need to leave."*

*"I believe I was fired only because I opposed the sexually explicit text messages, and reported such conduct to the owner."*

The statement is incorrect.

*According to the statement by Mr. Hill, Ms. Reeves was dismissed on Tuesday, October 27, 2015 for Disruptive and uncooperative behavior, opening sealed payroll check envelopes, yelling and hanging up on customers. This action came immediately after*

*Mr. Hill witnessed Ms. Reeves yelling at Ms. Dunn. Ms. Reeves was aware that her job was in jeopardy for her own behavior as evidenced by two (2) corrective counselings and having been sent home for the remainder of the day Thursday, October 22, 2015 as a paid 'decision day' for her to decide if she could return to the office and work in a professional manner.  [Attachment #1- Termination/Separation Notice & Attachment #3 – Statement of Danny Hill]*

8.  Submit copies of all written rules, policies and procedures relating to the issue(s) raised in the charge. If such does not exist in written form, explain the rules, policies and procedures.

**Copies of all written rules, policies and procedures relating to the issue(s) raised in the charge are provided.** [Attachment #12 – Copies of Harassment and other policies relating to this charge and Attachment #11 - *Copy of signed receipt of Workplace Harassment and all policies contained in the Employee Handbook; Harassment and Drug Free Workplace Training Sign in sheet 08/24/15 - Copy of Training Presented*]

**Issue: DISCHARGE**

1.  If the charging party was discharged, submit the following:

    a.  Date of discharge,  *10/27/2015*
    b.  Reason for discharge, *Not a Good Fit for the position because of disruptive & uncooperative, yelling & hanging up on customers, opened and looked through employees payroll checks.*
    c.  Statement of whether the charging party has any right to appeal, and whether the charging party made use of any appeal rights.

    *The decision to dismiss Ms. Reeves was not taken lightly and is final. Ms. Reeves admitted her actions and conduct to Mr. Hill during each corrective counseling meeting 09/30/15, 10/22/15, accepted the paid "decision day" for 10/22/15 and incidents leading to termination were witnessed by Mr. Hill on 10/27/15. Ms. Reeves made no effort to make the required improvements in order to retain the position.*

    d.  Person recommending the discharge, including name, position held, *Danny Hill, Owner of Tri-Hill Turf Care, Inc.*
    e.  Person making final decision to discharge the charging party, including name, position held. Attach copy of any evaluation or investigation report relating to the discharge, and *Danny Hill, Owner of Tri-Hill Turf Care, Inc. [Attachment #1]*
    f.  Copies of all pertinent documents in the charging party's personnel file relating to the subject discharge. *Corrective Counselings 09/30/15 & 10/22/15 [Attachment # 1]*

2.  Explain your discharge procedures in effect at the time of the alleged violation. If the procedures are in writing, submit a copy.

    **In accordance with the Tri-Hill Turf Care, Inc. Employee Handbook**

**Section 4 . Standards of Conduct 4.1 General Guidelines, Ms. Reeves violated item (s) #4 – Fighting or engaging in horseplay, loafing, disorderly or immoral conduct while at work & #12 Argumentative, uncooperative, or disruptive behavior. Each offense would have been a termination offense for the first violation; however, Tri-Hill Turf Care, Inc. attempted to salvage the employee by providing several attempts to correct the conduct. [Attachment # 12 & Attachment #1].**

3.  Submit copies of all written rules relating to employee duties and conduct. Explain how employees learn the contents and rules.

    **Copies of all written rules relating to the employee duties [Attachment #10] and conduct are provided in Attachment #12. Employees learn about the contents and rules at the time of hire, annual training and receipt/acknowledgement of policies [Attachment #11].**

4.  List all employees who committed the same or substantially similar offense(s) that the charging party committed and the disciplinary action taken against them. Supply backup documentation for the list. Include name, position title.

    *There is no record of any other employee being disruptive and uncooperative, opening sealed payroll envelopes, yelling at co-workers and hanging up on customers.*

| Employee Name | Position | Disciplinary Action |
|---|---|---|
| [EE Name] | [Position Title] | [Action] |

5.  List all employees discharged within the relevant period. For each employee, include employees name, position title, reason for and date of discharge, and a copy of the separation notice.

| Employee Name | Position | Reason | Date of Discharge |
|---|---|---|---|
| Alechia Reeves | Clerical/Receptionist | Disruptive/uncooperative conduct | 10/27/15 |

**The claimant, Alechia Reeves is the only employee dismissed from October 1, 2015 to October 27, 2015.**
**[Attachment # 1]**

Issue: HARASSMENT

1.  State whether your organization has adopted any procedure by which an employee may register a complaint of harassment by co-workers or supervisors. In your answer is yes, describe and, if written, submit a copy of such procedures. Explain how these procedures are communicated to employees and supervisory personnel.

    *Tri-Hill Turf Care, Inc. and SPMI has developed a three (3) level reporting system whereby an employee can report harassment. Employees may report harassment to their immediate supervisor, Mr. Hill (Owner) and/or by stopping by or calling SPMI's Human Resource Department. [Attachment #12]*

    *This information is provided in the Employee Handbook and the New Hire Packet both of which are provided to the Employee's at the time of hire. In addition, Tri-Hill Turf*

*Care, Inc. provides Workplace Harassment and Drug Free Workplace training on an annual basis.*

*Ms. Reeves attended Harassment training on 08/24/15, received a copy of the Workplace Harassment policy, and the Employee Handbook during her employment all of which outline the way to report harassment. [Attachment #11 – Copy of signed receipt of Workplace Harassment and all policies contained in the Employee Handbook; Harassment and Drug Free Workplace Training Sign in sheet 08/24/15 – Copy of Training Presented]*

2.  State whether the Charging Party complained to any supervisor or manager regarding the conduct described in the Charge of Discrimination. If your answer is yes, identify the person or persons with whom the complaint was registered and describe each and every action taken by your organization in response to that complaint. Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

    *Ms. Reeves never reported any unwanted and unwelcome behavior or text messages from Gary Martin to Mr. Hill or the SPMI Human Resource Department. [Attachment #3 – Statement of Danny Hill]*

3.  State whether any other individual has complained to any supervisor or manager concerning the conduct described in the Charge of Discrimination. If the answer is yes, please list the following:
    a.   Name, position of individual placing the complaint,
    b.   Name, position of supervisor or manager, and
    c.   Any actions taken by your organization in response to the complaint.
    Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

    *No one has filed a complaint of Harassment with Tri-Hill Turf Care, Inc. or SPMI's Human Resource Department.*

4.  Identify every individual who, to your knowledge, has information relevant to the allegations. For each such individual, provide the following:
    a.   Name, position,
    b.   Whether a present or former employee (if applicable), and
    c.   Address and telephone number.

    *Since there was no report of harassment, there is no one to report as having knowledge relevant to the allegation of harassment.*

5.  Indentify the other employees who worked with the Charging Party during the relevant period. Include:
    a.   Name, position,
    b.   Last known address and telephone.
    Submit copies of daily assignment sheets, time cards, attendance and payroll records for the individuals listed in #5, including the Charging Party.

    *The employee census report, payroll reports and time cards for all employees from 10/01/2015 to 10/27/2015 can be found in Attachment #13. The only employees with assignment records are the Techs. The assignment report titled 'Service Production by Technician' is included within Attachment #13.*

Issue: SEXUAL HARASSMENT

1. State and describe respondent's policy with regard to sexual harassment at the time of the charge. Explain how this policy is/was developed. Implemented, and disseminated. Submit a copy of all documents which state, describe, reference, or relate to the policy, its creation, its implementation, and its dissemination.

   *Section 4.4 Harassment Policy and  is provided in the Employee Handbook and the New Hire Packet both of which are provided to the Employee's at the time of hire. In addition, Tri-Hill Turf Care, Inc. provides Workplace Harassment and Drug Free Workplace training on an annual basis.*

   *Ms. Reeves attended Harassment training on 08/24/15, received a copy of the Workplace Harassment policy, and the Employee Handbook during her employment all of which outline the way to report harassment. [Attachment #11– Copy of signed receipt of Workplace Harassment and all policies contained in the Employee Handbook; Harassment and Drug Free Workplace Training Sign in sheet 08/24/15 - Copy of Training Presented]*

2. Has any applicant or employee complained or charged (either orally or in writing internally or externally) that any employee in the facility engaged in sexual harassment in connection with the employee's employment relationship? If so, submit the following information for each complaint received:
   a. Name and job title,
   b. Name and position of each person(s) receiving the complaint(s) and the date of the receipt of the complaint(s)
   c. Name and position of each person whose conduct was the subject of the complaint,
   d. A detailed description of the relationship between the alleged harasser and the Respondent,
   e. A detailed account of the conduct which is subject of the complaint including the date(s),
   f. The contact in which the alleged conduct occurred, including the specific location,
   g. An explanation of the action(s) taken to resolve this complaint, both with respect to the alleged harasser and the complainant,
   h. The name and sex of each witness to the event(s) alleged which served as a basis for the sexual harassment complaint, and
   i. A description of each disciplinary/discharge action taken against the complainant, including but not limited to, the date and nature of each action.
   j. Provide a list of all employees during the relevant period including their names, addresses, telephone numbers, emergency contact numbers, disciplinary actions and salary information.
   k. Provide the complete personnel file of all persons accused of sexual harassment.

Submit all documents which state, describe, reference, or relate to each sexual harassment complaint including, but not limited to, the resolution of the complaint.

   *No one has filed a complaint of Sexual Harassment with Tri-Hill Turf Care, Inc. or SPMI's Human Resource Department.*

Issues: WAGES

1. Describe and furnish company policy on wage and salary determination and factors affecting wages and salary increases.

   *Policies related to wage increases can be found in Attachment #14.*

2. Supply a statement or documents which describe how your organization determined an individual employee's salary or wage for the Charging Party's job classification during the relevant period. Provide:
   a. All documents reflecting the minimum and the maximum rates of pay for each position,
   b. All documents reflecting the effect of seniority on pay rates, and
   c. All documents reflecting the effect of merit increases or evaluations in the pay rates.

*Ms. Reeves was the only employee in the Clerical/Receptionist position.*
*There are no comparative or similarly situated employees.*

3. Supply a copy of the payroll records for the relevant periods for each individual employed in the Charging Party's job classification or department, and for all comparative individuals listed by the Charging Party, include:
   a. Employee name, position, hire date,
   b. The amount of overtime worked by each individual within the relevant period, including the overtime pay rate.

*Ms. Reeves was the only employee in the Clerical/Receptionist position.*
*There are no comparative or similarly situated employees.*

4. If the payroll records supplied in response to Question #3 above reflect that the Charging Party received lower pay than did others within the Charging Party's job classification, explain in detail the reason for the pay differential.

*Ms. Reeves was the only employee in the Clerical/Receptionist position.*
*There are no comparative or similarly situated employees.*

Basis: RETALIATION

1. List by name, and position all officials of your organization who have been informed of, or knew of all the allegations of discrimination made by the Charging Party, if any. For each person listed, state the date such notification was received, the nature of the notification, and the person's response to it. Submit all documents which state, describe, reference, or relate to the notification of the Charging Party's complaint.

*Ms. Reeves never reported any discrimination to Danny Hill, Owner of Tri-Hill Turf Care, Inc.*
*SPMI Human Resource Department has no record of contact and/or any allegations being*
*filed with their office by Ms. Reeves*

2. Describe any personnel action(s) involving Charging Party taken after the earliest date any person in your organization had knowledge of Charging Party's allegation(s) of discrimination. Submit all documents which state, describe, reference, or relate to these personnel actions.

*The first report of the allegation of Sexual Harassment was the receipt of the EEOC charge.*
*There were no reports of Sexual Harassment received by Tri-Hill Turf Care, Inc. or SPMI.*

*EEOC Charge Correspondence*

**RE: Alechia Reeves**

**EEOC Charge No.: 493-2016-00873**

**Tri-Hill Turf Care, Inc.**



**U.S. Equal Employment Opportunity Commission**
**Little Rock Area Office**
820 Louisiana
Suite 200
Little Rock, AR 72201

## NOTICE OF CHARGE OF DISCRIMINATION

### (This Notice replaces EEOC FORM 131)

### DIGITAL CHARGE SYSTEM

August 25, 2016

**To:** Mr. Danny Hill
Owner
TRI-HILL LAWN CARE
1308 Zero Street
Fort Smith, AR 72901

This is notice that a charge of employment discrimination has been filed with the EEOC against your organization by Alechia Reeves, under: Title VII of the Civil Rights Act (Title VII). The circumstances of the alleged discrimination are based on Retaliation and Sex, and involve issues of Harassment, Sexual Harassment, Wages, and Discharge that are alleged to have occurred on or about Oct 01, 2015 through Oct 27, 2015.

The Digital Charge System makes investigations and communications with charging parties and respondents more efficient by digitizing charge documents. The charge is available for you to download from the EEOC Respondent Portal, EEOC's secure online system.

Please follow these instructions to view the charge within ten (10) days of receiving this Notice:

1. Access EEOC's secure online system: **https://nxg.eeoc.gov/rsp/login.jsf**
2. Enter this EEOC Charge No.: **493-2016-00873**
3. Enter this password: **LR7515TA**

Once you log into the system, you can view and download the charge, and electronically submit documents to EEOC. The system will also advise you of possible actions or responses, and identify your EEOC point of contact for this charge.

If you are unable to log into the EEOC Respondent Portal or have any questions regarding the Digital Charge System, you can send an email to LRAO.INTAKE@EEOC.GOV.

## Preservation of Records Requirement

EEOC regulations require respondents to preserve all payroll and personnel records relevant to the charge until final disposition of the charge or litigation. 29 CFR §1602.14. For more information on your obligation to preserve records, see http://eeoc.gov/employers/recordkeeping.cfm.

## Non-Retaliation Requirements

The laws enforced by the EEOC prohibit retaliation against any individual because s/he has filed a charge, testified, assisted or participated in an investigation, proceeding or hearing under these laws. Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. For more information, see http://www.eeoc.gov/laws/types/facts-retal.cfm.

## Legal Representation

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please provide the attorney's contact information when you log in to the online system.

Please retain this notice for your records.

 **U.S. Equal Employment Opportunity Commission**

## FEDERAL INVESTIGATION:
## REQUEST FOR POSITION STATEMENT
## AND SUPPORTING DOCUMENTARY EVIDENCE

EEOC hereby requests that your organization submit within 30 days a Position Statement setting forth all facts which pertain to the allegations in the charge of discrimination under investigation, as well as any other facts which you deem relevant for EEOC's consideration.

We recommend you review EEOC's resource guide on "Effective Position Statements" as you prepare your response to this request.

### Fact-Based Position Statement
This is your opportunity to raise any and all defenses, legal or factual, in response to each of the allegations of the charge.  The position statement should set forth all of the facts relevant to respond to the allegations in the charge, as well as any other facts the Respondent deems pertinent to EEOC's consideration. The position statement should only refer to, but not identify, information that the Respondent asserts is sensitive medical information, or confidential commercial or financial information.

EEOC also requests that you submit all documentary evidence you believe is responsive to the allegations of the charge. If you submit only an advocacy statement, unsupported by documentary evidence, EEOC may conclude that Respondent has no evidence to support its defense to the allegations of the charge.

EEOC may release your position statement and non-confidential attachments to the Charging Party and her representative and allow them to respond to enable the EEOC to assess the credibility of the information provided by both parties. It is in the Respondent's interest to provide an effective position statement that focuses on the facts. EEOC will not release the Charging Party's response, if any, to the Respondent.

If no response is received to this request, EEOC may proceed directly to a determination on the merits of the charge based on the information at its disposal.

### Signed by an Authorized Representative
The Position Statement should be signed by an officer, agent, or representative of Respondent authorized to speak officially on its behalf in this federal investigation.

**Segregate Confidential Information into Separately Designated Attachments**
If you rely on confidential medical or commercial information in the position statement, you should provide such information in separate attachments to the position statement labeled "Sensitive Medical Information," "Confidential Commercial or Financial Information," or "Trade Secret Information" as applicable. Provide an explanation justifying the confidential nature of the information contained in the attachments. Medical information about the Charging Party is not sensitive or confidential medical information in relation to EEOC's investigation.

Segregate the following information into separate attachments and designate them as follows:

    a. Sensitive medical information (except for the Charging Party's medical information).
    b. Social Security Numbers
    c. Confidential commercial or financial information.
    d. Trade secrets information.
    e. Non-relevant personally identifiable information of witnesses, comparators or third parties, for example, social security numbers, dates of birth in non-age cases, home addresses, personal phone numbers and email addresses, etc.
    f. Any reference to charges filed against the Respondent by other charging parties.

**Requests for an Extension**
If Respondent believes it requires additional time to respond, it must, at the *earliest possible time* in advance of the due date, make a written request for extension, explain why an extension is necessary, and specify the amount of additional time needed to reply.  Submitting a written request for extension of time does not automatically extend the deadline for providing the position statement.

**Upload the Position Statement and Attachments into the Respondent Portal**
You can upload your position statement and attachments into the Respondent Portal using the **+ Upload Documents** button. Select the "Position Statement" Document Type and click the **Save Upload** button to send the Position Statement and attachments to EEOC. Once the Position Statement has been submitted, you will not be able to retract it via the Portal.

EEOC Form 5 (5/01)

RECEIVED
MAY

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | 493-2016-00873 |
| X EEOC | |

_____ and EEOC

State or local Agency, if any

| Name (Indicate Mr. Ms. Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Alechia Reeves | (918) 951-0627 | 05-07-1984 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1323 Jacobs Ave | Fort Smith, AR  72908 |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Tri-Hill Lawn Care | 12 to 15 | 479-782-2847 |

| Street Address | City, State and ZIP Code |
|---|---|
| 1308 Zero Street | Fort Smith  AR 72901 |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| __ RACE   __ COLOR  XX __ SEX   __ RELIGION   __ NATIONAL ORIGIN | Earliest          Latest          10/27/16 |
| X  RETALIATION   __ AGE   __ DISABILITY   __ OTHER (Specify below.) | __ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attached extra sheet(s)):
I began my employment with Tri-Hill Lawn Care and Pest Control in approximately October of 2014. My initial job position was that of an office and accounting clerk, where I worked in the office five (5) days a week, with a pay rate of $11.50 per hour. In approximately, August of 2015 one of the employees of the business left, and I was asked to serve in the "office manager" position. I did begin to serve in such capacity, while the business also hired another younger lady to work with me. I spent time in the office manager position essentially training the new employee for the same job. One day in October of 2015, I accidently opened the new employee's check, and saw that the new employee was earning more than myself, and had a rate of pay of over $16.00 per hour. I let the owner know I was not happy to have found that the new employee was earning more money than myself. The owner stated that he would be giving me a raise, which should appear on my next check. At approximately the same time, I advised the owner that I was having some difficulty with unwelcome and sexually related text messages from one of the lawn tech's, (Gary Martin). The following week, (on Monday) no one would speak with me. On Tuesday, Danny Hill, one of the owners, told me that it was "not working out", and I was fired. I believe I was fired only because I opposed the sexually explicit text messages, and reported such conduct to the owner.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| 02/03/2016        Alechia Reeves | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)  3/2/16 |
| Date        Charging Party Signature | TERI COLLINS MY COMMISSION # 12378113 EXPIRES: August 23, 2020 Yell County |

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## REQUEST FOR INFORMATION

Charging Party: Alechia Reeves
Respondent: TRI-HILL LAWN CARE
EEOC Charge No.: 493-2016-00873

1. Give the correct name and address of the facility named in the charge.

2. State the total number of persons who were employed by your organization during the relevant period. Include both full and part-time employees. How many employees are employed by your organization at the present time?

3. Supply an organizational chart, statement, or documents which describe your structure, indicating, if any, the relationship between it and superior and subordinate establishments within the organization.

4. Supply a statement or documents which identify the principal product or service of the named facility.

5. State the legal status of your organization, i.e., corporation, partnership, tax-exempt non-profit, etc. If incorporated, identify the state of incorporation.

6. State whether your organization has a contract with any agency of the federal government or is a subcontractor on a project which receives federal funding. Is your organization covered by the provisions of Executive Order 11246? If your answer is yes, has your organization been the subject of a compliance review by the OFCCP at any time during the past two years?

7. Submit a written position statement on each of the allegations of the charge, accompanied by documentary evidence and/or written statements, where appropriate. Also include any additional information and explanation you deem relevant to the charge.

8. Submit copies of all written rules, policies and procedures relating to the issue(s) raised in the charge. If such does not exist in written form, explain the rules, policies and procedures.

Issue: DISCHARGE

1. If the Charging Party was discharged, submit the following:
    a. date of discharge,
    b. reason for discharge,
    c. statement of whether the Charging Party had any right of appeal, and whether the Charging Party made use of any appeal rights
    d. person recommending the discharge, including name, position held,
    e. person making final decision to discharge the Charging Party, including name, position held. Attach copy of any evaluation or investigation report relating to the discharge, and
    f. copies of all pertinent documents in the Charging Party's personnel file relating to the subject discharge.

2. Explain your discharge procedures in effect at the time of the alleged violation. If the procedures are in writing, submit a copy.

3. Submit copies of all written rules relating to employee duties and conduct. Explain how employees learn the contents and rules.

4. List all employees who committed the same or substantially similar offense(s) that the Charging Party committed and the disciplinary action taken against them. Supply backup documentation for the list. Include name, position title.

5. List all the employees discharged within the relevant period. For each employee, include employees name, position title, reason for and date of discharge, and a copy of the separation notice.

Issue: HARASSMENT

1. State whether your organization has adopted any procedure by which an employee may register a complaint of harassment by co-workers or supervisors. If your answer is yes, describe and, if written, submit a copy of such procedures. Explain how these procedures are communicated to employees and supervisory personnel.

2. State whether the Charging Party complained to any supervisor or manager regarding the conduct described in the Charge of Discrimination. If your answer is yes, identify the person or persons with whom the complaint was registered and describe each and every action taken by your organization in response to that complaint. Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

3. State whether any other individual has complained to any supervisor or manager concerning the conduct described in the Charge of Discrimination. If the answer is yes, please list the following:
    a. name, position, of individual placing the complaint,
    b. name, position, of supervisor or manager, and
    c. any actions taken by your organization in response to the complaint.
Provide a copy of any written document which reflects the complaint and the action taken as a result of the complaint.

4. Identify every individual who, to your knowledge, has information relevant to the allegations. For each such individual, provide the following:
    a. name, position,
    b. whether a present or former employee (if applicable), and
    c. address and telephone number.

5. Identify the other employees who worked with the Charging Party during the relevant period. Include:
    a. name, position,
    b. last known address and telephone.
Submit copies of daily assignment sheets, time cards, attendance and payroll records for the individuals listed in #5, including the Charging Party.

Issue: SEXUAL HARASSMENT

1. State and describe Respondent's policy with regard to sexual harassment at the time of the charge. Explain how this policy is/was developed, implemented, and disseminated. Submit a copy of all documents which state, describe, reference, or relate to the policy, its creation, its implementation, and its dissemination.

2. Has any applicant or employee complained or charged (either orally or in writing internally or externally) that any employee in the facility engaged in sexual harassment in connection with the employee's employment relationship? If so, submit the following information for each complaint received:
    a. name, position, and department of complaint,
    b. name and position for each person(s) receiving the complaint(s) and the date of the receipt of the complaint(s),
    c. name and position of each person whose conduct was the subject of the complaint,
    d. a detailed description of the relationship between the alleged harasser and the Respondent,
    e. a detailed account of the conduct which is subject of the complaint including the date(s),
    f. the context in which the alleged conduct occurred, including the specific location,
    g. an explanation of the action(s) taken to resolve this complaint, both with respect to the alleged harasser and the complainant,
    h. the name and sex of each witness to the event(s) alleged which served as a basis for the sexual harassment complaint, and
    i. A description of each disciplinary/discharge action taken against the complainant, including, but not limited to, the date and nature of each action.
Submit all documents which state, describe, reference, or relate to each sexual harassment complaint including, but not limited to, the resolution of the complaint.

Issue: WAGES

1. Describe and furnish company policy on wage and salary determination and factors affecting wages and salary increases.

2. Supply a statement or documents which describe how your organization determined an individual employee's salary or wage for the Charging Party's job classification during the relevant period. Provide:
    a. all documents reflecting the minimum and the maximum rates of pay for each position,
    b. all documents reflecting the effect of seniority on pay rates, and
    c. all documents reflecting the effect of merit increases or evaluations in the pay rates.

3. Supply a copy of the payroll records for the relevant periods for each individual employed in the Charging Party's job classification or department, and for all comparative individuals listed by the Charging Party. Include:
    a. employee name, position, hire date,
    b. the amount of overtime worked by each individual within the relevant period, including the overtime pay rate.

4. If the payroll records supplied in response to Question #3 above reflect that the Charging Party received lower pay than did others within the Charging Party's job classification, explain in detail the reason for the pay differential.

Basis: RETALIATION

1. List by name, and position all officials of your organization who have been informed of, or knew of all the allegations of discrimination made by the Charging Party, if any.  For each person listed, state the date such notification was received, the nature of the notification, and the person's response to it. Submit all documents which state, describe, reference, or relate to the notification of the Charging Party's complaint.

2. Describe any personnel action(s) involving Charging Party taken after the earliest date any person in your organization had knowledge of Charging Party's allegation(s) of discrimination. Submit all documents which state, describe, reference, or relate to these personnel actions.

EEOC FORM 131 (11/09)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Mr. Danny Hill<br>Owner<br>TRI-HILL LAWN CARE<br>1308 Zero Street<br>Fort Smith, AR 72901 | **Alechia Reeves** |
| | THIS PERSON (check one or both) |
| | [X] Claims To Be Aggrieved |
| | [ ] Is Filing on Behalf of Other(s) |
| | EEOC CHARGE NO.<br>493-2016-00873 |

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act (Title VII)  [ ] The Equal Pay Act (EPA)  [ ] The Americans with Disabilities Act (ADA)

[ ] The Age Discrimination in Employment Act (ADEA)  [ ] The Genetic Information Nondiscrimination Act (GINA)

The boxes checked below apply to our handling of this charge:

1. [X] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [ ] Please provide by  a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below.  Your response will be placed in the file and considered as we investigate the charge.  A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by  to the enclosed request for information and send your response to the EEOC Representative listed below.  Your response will be placed in the file and considered as we investigate the charge.  A prompt response to this request will make it easier to conclude our investigation.

5. [ ] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources.  If you would like to participate, please say so on the enclosed form and respond by
to
If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above.  Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Kenneth Collins,
Intake Supervisor

*EEOC Representative*

*Telephone*  **(501) 324-5522**

**Little Rock Area Office
820 Louisiana
Suite 200
Little Rock, AR 72201**
Fax: (501) 324-5991

Enclosure(s): [ ] Copy of Charge

## CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] Race  [ ] Color  [X] Sex  [ ] Religion  [ ] National Origin  [ ] Age  [ ] Disability  [X] Retaliation  [ ] Genetic Information  [ ] Other

ISSUES: Discharge, Harassment, Sexual Harassment, Wages

DATE(S) (on or about):  EARLIEST: 10-01-2015    LATEST: 10-27-2015

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| March 17, 2016 | William A. Cash, Jr.,<br>Area Office Director | |

*Attachment #1*

## RE: Alechia Reeves

## EEOC Charge No.: 493-2016-00873

**Tri-Hill Turf Care, Inc.**

C/o SPMI
1701 Main St.
Van Buren, AR 72956

Phone: (479) 474-7762
FAX: (479) 922-8001



## Employee Termination/Separation Notice

Employer/Company: _Tri-Hill tion_

Please be informed that as of _10-27-15_ (Effective Date) the below employee is no longer working for the above Employer/Company.

_Alechia G. Reeves_   _440·74·4274_
Employee Name                    Employee Social Security Number

### Type and Reason for Termination/Separation
*(Please check all that apply)*

☐ **Voluntary Termination:**
  ☐ Another Job      ☐ No Call, No Show      ☐ Personal Reasons
  ☐ No Notice Given      ☐ Walk Out      ☐ Relocated/Moved
  ☐ Unknown      ☐ Other: _____

☒ **Involuntary Termination:**
  ☒ Replaced/Not a Good Fit      ☐ Lack of Work/Lay Off      ☐ Insubordination
  ☐ Theft      ☐ Position Eliminated      ☐ Positive Drug Screen
  ☐ Failure to Perform Job Duties      ☐ Time Theft      ☐ Company Closed
  ☐ Excessive Absenteeism/Tardiness      ☐ Falsification of Records      ☐ Deceased
  ☐ Administrative Termination      ☐ Other: _____

**Explanation or Additional Comments:**

_Disruptive + Uncooperative, Yell + hang up on customers — Opened + looked through Employees Checks/Payroll_

_10-27-15_              _President_
Date          Authorized Signature          Title

*Attachment #2*

## RE: Alechia Reeves

## EEOC Charge No.: 493-2016-00873

**Tri-Hill Turf Care, Inc.**

c/o SPMI
1701 Main St.
Van Buren, AR 72956

Phone: (479) 474-7762
FAX:   (479) 474-8001

## CORRECTIVE COUNSELING REPORT

_Tri Hill Top_
CLIENT COMPANY
LOCATION

_Alysia Rowe_
EMPLOYEE'S NAME (PLEASE PRINT)

_9-30-15_
DATE

_Secretary_
POSITION

SOCIAL SECURITY NUMBER

_4:15 pm_
TIME

1. Reason for corrective counseling:

_____ ATTENDANCE          _____ CARELESSNESS          _____ INSUBORDINATION
_____ TARDINESS           _____ WORK QUALITY/QUANTITY  _____ DOES NOT FOLLOW
PROCEDURE
___X___ OTHER:

DESCRIBE FACTS IN DETAIL: _Gradual Texting + Causing Turmoil/Disruption amongst Employees during Working Hours._

2. Possible consequences if performance and behavior are not corrected:

_____ TERMINATION          _____ LOSS OF POSITION          __X__ OTHER: PLEASE EXPLAIN
                                                               _Corrective Counseling_

3. To avoid the consequences of further discipline, the employee must take the following action:
(Explain in specific detail so the employee can measure their progress.)

_Stop the Activity_

4. Manager will determine if employee's progress is acceptable by:   _12 / 18 / 15_
                                                                     MONTH  DAY  YEAR

5. Date the required performance must be accomplished by:   _12 / 18 / 15_
                                                           MONTH  DAY  YEAR

I acknowledge that I have received a copy of this report:   _Refusco_
                                                            Employee's Signature          Date

                                                            _[signature]_  _9-30-15_
                                                            Supervisor's Signature       Date

Employee is encouraged to make any comments on a separate attached sheet.

(1) copy - Human Resources Dept.     (1) copy - Client Company file     (1) copy - Employee

HR-05 revised 10/04/99

## CORRECTIVE COUNSELING REPORT

_Trinity Temp_
CLIENT COMPANY
LOCATION

_Alycia Freeman_
EMPLOYEE'S NAME (PLEASE PRINT)

_10-22-15_
DATE

_Secretary_
POSITION

SOCIAL SECURITY NUMBER

_12:05_
TIME

1. Reason for corrective counseling:

_____ ATTENDANCE          _____ CARELESSNESS          _____ INSUBORDINATION
_____ TARDINESS          _____ WORK QUALITY/QUANTITY          _____ DOES NOT FOLLOW
PROCEDURE
__X__ OTHER:

DESCRIBE FACTS IN DETAIL: ⓵ _Opened another Employees paycheck_
_Envelope + Left it open._

⓶ _Also was Texting Non work related Messages Amonst_
_Other Field Employees during work time_

2. Possible consequences if performance and behavior are not corrected:

_____ TERMINATION          _____ LOSS OF POSITION          __X__ OTHER: PLEASE EXPLAIN
_Strong Warning_

3. To avoid the consequences of further discipline, the employee must take the following action:
(Explain in specific detail so the employee can measure their progress.)

_Stop Non work Related Texting + Stop_
_instiing Turmoil/unrest Amongst employees_

4. Manager will determine if employee's progress is acceptable by:   _12_ / _18_ / _15_
MONTH   DAY   YEAR

5. Date the required performance must be accomplished by:   _12_ / _18_ / _15_
MONTH   DAY   YEAR

I acknowledge that I have received a copy of this report:   _Refused!_
Employee's Signature          Date

_____   _10-22-15_
Supervisor's Signature          Date

Employee is encouraged to make any comments on a separate attached sheet.

(1) copy - Human Resources Dept.          (1) copy - Client Company file          (1) copy - Employee

HR-05 revised 10/04/99

*Attachment #3*

**RE: Alechia Reeves**

**EEOC Charge No.: 493-2016-00873**

**Tri-Hill Turf Care, Inc.**

C/O SPMI
1701 Main St.
Van Buren, AR 72956

Phone: (479) 474-7752
FAX:    (479) 922-8001

**Statement from Danny Hill, Owner of Tri-Hill Turf Care, Inc.**

10/06/14 - Ms. Reeves was hired on 10/06/14 to perform general secretarial duties as a Receptionist. During her interview, she disclosed that she was working hard to get her life back on track and asked me for a chance. Ms. Reeves beginning rate of pay was $10.50 per hour which was $2.50 per hour more than her previous job.

01/04/15 – I issued a merit raise to $11.00 per hour.

05/03/15 – I issued a merit raise to $11.50 per hour.

08/24/15 – Annual Harassment and Drug Free Workplace Training was conducted by SPMI at our location. All employees were in attendance and signed the training log. As of this date, there were no incidents reported to me regarding any type of unwelcome or unwanted behavior.

09/28/15 – Office Manager position was vacated. Richard Bernard, Service Manager was made 'acting' Office Manager until such time as the position could be filled. No internal employees inquired or applied for the position between 09/28/15 to 10/05/15. In anticipation of this position coming available I had been interviewing qualified candidates for approximately 4 weeks.

09/30/15 – It was reported to me that Ms. Reeves and a few of the Techs were involved in non-work related texting each other during work hours. I met with all parties regarding the issue. I did not ask to view the messages or what they were regarding and no one disclosed this information to me. All parties including Ms. Reeves admitted to consensual participation in such text messages and all parties were issued corrective counseling. I further informed them that from this moment forward all non-work related texting during work were to stop immediately. Ms. Reeves refused to sign the counseling form during our meeting. No one reported unwanted or unwelcome contact during these meetings.

10/05/15 – Anita Dunn was hired as Office Manager. Ms. Reeves was a subordinate employee under Ms. Dunn. Ms. Dunn was in training with several people in our office including myself and Richard Bernard who was serving as Office Manager during the transition period. As a manager, Ms. Dunn was scheduled to attend additional systems training offsite. Ms. Reeves was simply showing Ms. Dunn the flow of day-to-day transactions as she (Ms. Reeves) had been trained.

10/18/15 – I issued a merit raise to $12.00 per hour to Ms. Reeves. Ms. Reeves did not request or demand this raise.

10/22/15 – It was reported to me by Wayne Harbour that Ms. Reeves was continuing to text him and he wanted to know what he should do about it. I told him I would take care of it right away.

On this same day, it was reported to me that Ms. Reeves was very upset, 'went off in the office', yelling and hanging up on customers and left the building. The phones were ringing and Ms. Reeves was nowhere to be found. I called Ms. Reeves and told her she needed to get back to the office so we could talk about whatever was going on.

During my meeting with Ms. Reeves that afternoon, she admitted to taking advantage of being alone in the office and opening the sealed payroll check envelopes of Richard Bernard, Anita Dunn, and Myself among others. She told me she wanted to be the Office Manager and was upset that Ms. Dunn was making more money than she was. I explained to her that for the Office Manager position we were looking for someone with strong business skills including handling large sums of money, experience working with a variety of employees, and experience with business processes/procedures. While Ms. Reeves had the potential with more knowledge, experience and professionalism to grow into that type of position she didn't have the KSAOs we need right now. I reminded her that she does not have authorization to access the payroll records that is not her job and no one is to open another employee's sealed payroll check. I asked her about texting co-workers during work hours again and Ms. Reeves admitted that she had.  I told her that her outbursts, hanging up on customers, opening payroll checks and texting co-workers during work hours had to stop immediately.  I told her, "We are going to be professional here. You need to go home and think about this."  She needed to decide if she could work professionally in this office so I gave her the remainder of Thursday, October 22, 2015 off with pay as a decision day. Ms. Reeves refused to sign the counseling form.

Ms. Reeves never told me that she was being harassed by anyone during this meeting.

10/23/15 & 10/26/15 – Ms. Reeves worked without incident.

10/27/15 – I left the office to pick up mail and run errands.

Upon my return to the office, I walked in and heard Ms. Reeves ranting and yelling at Ms. Dunn. I calmly asked Ms. Reeves, "Can I see you in my office for a moment?" When Ms. Reeves entered my office I told her, "This is not working out. You need to leave."

Ms. Reeves never told me that she was being harassed by anyone during this meeting.

After the dismissal of Ms. Reeves, I discussed the situation with Ms. Dunn. During this conversation, Ms. Dunn informed me that Ms. Reeves had been demanding her employment file, had been talking bad about me and the business, was gossiping about and sending inappropriate texts to the Techs, hanging up on customers, etc. I asked Ms. Dunn, "why didn't you tell me about this sooner?" Ms. Dunn said she thought she could handle it. I asked Ms. Dunn to prepare a statement about Ms. Reeves' behavior and work performance issues she observed while working with her.

Unemployment Claims – It was my decision to not respond to the Unemployment Claims questionnaires received because I knew a finding of discharge for 'misconduct' would get her disqualified for benefits.

09/21/16 – In response to this claim by Ms. Reeves, I obtained written statements from the Techs who had been involved and/or had reported issues about working with Ms. Reeves. It was only then that the extent of her behavior towards her co-workers was revealed to me. I had not witnessed and no one prior to this date had reported any unwanted and unwelcome physical contact with Ms. Reeves

In summary, Ms. Reeves was hired on 10/06/14 to perform general secretarial duties including customer service as a Receptionist. She did not have the job skills needed and had never been appointed to the

Office Manager position. Ms. Reeves was not in a position of authority to demand to see or go through employee records, have access to confidential employee information such as payroll information or open sealed payroll check envelopes for our employees. Ms. Reeves admitted to consensual texting male employees, opening sealed payroll envelopes, and leaving the office without permission because she was upset over Ms. Dunn being hired as the Office Manager. Ms. Reeves was issued corrective counseling when issues were reported to me. Ms. Reeves refused to sign each counseling form. On 10/22/15, Ms. Reeves was sent home on a paid 'decision day' for her to think about whether she could work at this office in a professional manner. The final incident came on 10/27/15 after I left the office to run errands and I returned to my office to the sound of Ms. Reeves causing a scene and yelling at Ms. Dunn. I told her it was not working out and she needed to leave.

Danny Hill, Owner

Tri-Hill Turf Care, Inc.

## CORRECTIVE COUNSELING REPORT

_Tri Hill Leaf_
CLIENT COMPANY
LOCATION

_Mike Stoles_
EMPLOYEE'S NAME (PLEASE PRINT)

_10:01:15_
DATE

_Tech_
POSITION

SOCIAL SECURITY NUMBER

_7:15am_
TIME

1. Reason for corrective counseling:

_____ ATTENDANCE          _____ CARELESSNESS          _____ INSUBORDINATION
_____ TARDINESS           _____ WORK QUALITY/QUANTITY  _____ DOES NOT FOLLOW
PROCEDURE
_X_ OTHER: _____

DESCRIBE FACTS IN DETAIL: _General Texting Causing_

_Turmoil / Disruption Among Employees during_
_work Hrs (Gossip)_

2. Possible consequences if performance and behavior are not corrected:

_____ TERMINATION          _____ LOSS OF POSITION          _X_ OTHER: PLEASE EXPLAIN
                                                              _Corrective Counseling_

3. To avoid the consequences of further discipline, the employee must take the following action:
(Explain in specific detail so the employee can measure their progress.)

_Stop Activity_

4. Manager will determine if employee's progress is acceptable by:      _12_ / _18_ / _15_
                                                                       MONTH   DAY   YEAR

5. Date the required performance must be accomplished by:                _12_ / _18_ / _15_
                                                                       MONTH   DAY   YEAR

I acknowledge that I have received a copy of this report:      _____
                                                              Employee's Signature      Date

                                                              _____  _10/1/15_
                                                              Supervisor's Signature     Date

Employee is encouraged to make any comments on a separate attached sheet.

(1) copy - Human Resources Dept.        (1) copy - Client Company file        (1) copy - Employee

HR-05 revised 10/04/99

## CORRECTIVE COUNSELING REPORT

_Tri-Hillfurt_
CLIENT COMPANY
LOCATION

_Gary Martin_
EMPLOYEE'S NAME (PLEASE PRINT)

_10-01-15_
DATE

_Tech_
POSITION

SOCIAL SECURITY NUMBER

_7:15 am_
TIME

1. Reason for corrective counseling:

| ATTENDANCE | CARELESSNESS | INSUBORDINATION |
| TARDINESS | WORK QUALITY/QUANTITY | DOES NOT FOLLOW |
| PROCEDURE | | |
| X OTHER: | | |

DESCRIBE FACTS IN DETAIL: _General Testing causing_
_Turmoil / Disruption Among Employees doing work Has_

_No Gossip_

2. Possible consequences if performance and behavior are not corrected:

_____ TERMINATION    _____ LOSS OF POSITION    _X_ OTHER: PLEASE EXPLAIN

_Corrective Counseling_

3. To avoid the consequences of further discipline, the employee must take the following action:
(Explain in specific detail so the employee can measure their progress.)

_Stop The Distructs_

4. Manager will determine if employee's progress is acceptable by:      _12_ / _18_ / _15_
                                                                      MONTH  DAY  YEAR

5. Date the required performance must be accomplished by:      _12_ / _18_ / _15_
                                                            MONTH  DAY  YEAR

I acknowledge that I have received a copy of this report:   _Gary Martin_
                                                       Employee's Signature        Date

                                                        _____   _10/1/15_
                                                       Supervisor's Signature       Date

Employee is encouraged to make any comments on a separate attached sheet.

(1) copy - Human Resources Dept.        (1) copy - Client Company file        (1) copy - Employee

HR-05 revised 10/04/99

## CORRECTIVE COUNSELING REPORT

*Tri-Hill tnf*
CLIENT COMPANY
LOCATION

*Wayne Harbour*
EMPLOYEE'S NAME (PLEASE PRINT)

*10-1-15*
DATE

*Tech*
POSITION

SOCIAL SECURITY NUMBER

*7:15 am*
TIME

1. Reason for corrective counseling:

_____ ATTENDANCE               _____ CARELESSNESS                _____ INSUBORDINATION
_____ TARDINESS                _____ WORK QUALITY/QUANTITY       _____ DOES NOT FOLLOW
PROCEDURE
___X___ OTHER: _____

DESCRIBE FACTS IN DETAIL: *General Testing causing*
*turmoil / Disruption among employees during*
*work hours — Gossip*

2. Possible consequences if performance and behavior are not corrected:

_____ TERMINATION     _____ LOSS OF POSITION     __X__ OTHER: PLEASE EXPLAIN
*Corrective Counseling*

3. To avoid the consequences of further discipline, the employee must take the following action:
(Explain in specific detail so the employee can measure their progress.)

*Stop the Activity*

4. Manager will determine if employee's progress is acceptable by: *12* / *18* / *15*
MONTH   DAY   YEAR

5. Date the required performance must be accomplished by: *12* / *18* / *15*
MONTH   DAY   YEAR

I acknowledge that I have received a copy of this report: _____
Employee's Signature                    Date

Supervisor's Signature          *10-1-15*   Date

Employee is encouraged to make any comments on a separate attached sheet.

(1) copy - Human Resources Dept.      (1) copy - Client Company file      (1) copy - Employee

HR-05 revised 10/04/99

**Statement of Anita Dunn, Office Manager – Tri-Hill Turf Care and Pest Control, Inc.**       **10/27/2015**

During the brief time I worked with Alechia, I observed that she would work fine as long as Danny was in the office. When he would leave the office I observed the following:

Alechia was getting angry, having mood swings and would hang up on customers.

There was a time when Alechia was crying at work for 3 days.

Alechia was continually gossiping and causing trouble between the Tech's. She said that Brenda's cancer was from cigars. She said that Danny Hill had "no balls" and was a "piece of shit". She told me a couple of times that I (Anita) was only hired for my looks. Alechia is a troublemaker.

Alechia was supposed to be showing me processes that she had been trained to do but she was not doing it because she was mad about me being hired as the Office Manager instead of her. Alechia was saying "I will only do what I have to, to get by because I hate this job and everyone who works here." She told me she was interviewing for other jobs.

Alechia kept saying she and her dad were going to contact my ex-husband.

I saw Alechia remove paperwork from the office.

Alechia told me that Tony Bortello was her boyfriend but she was 'friendly' with a couple of other Techs and had known some of them before coming to work here. She kept gossiping about the Techs, which ones she liked, which ones were cute, and to prove her point that she was 'friendly' with them, she showed me photos (of men's genitals) on her cellphone that she got of the Techs. I witnessed Alechia physically touching and poking the Techs when they came into the office and making suggestive comments to them. I did not intervene because she told me earlier about being "friendly" with them and no one seemed uncomfortable.

Alechia kept demanding that I give her my employment file.

On Thursday, October 22, 2015 , Alechia Reeves had distributed all sealed payroll checks into the employees' boxes except mine. Alechia walked to my desk with the envelope, reached over me to get my letter opener, opened the sealed envelope, looked at the check, then threw it to me. She was upset, started crying, got on her cellphone and left the building.

Alechia worked Friday, October 23, 2015 and Monday, October 26, 2015. On Tuesday, October 27, 2015, everything seemed fine for a while. Sometime after Danny left the office, Alechia started yelling at me. Danny came back into the office and asked to speak with her.  It was my understanding that she was dismissed.

**Additional Information requested September 21, 2016**

Being a new employee still within the first 3-weeks of training, I did not report Alechia's behavior or cellphone activity to Danny because I thought I could handle this myself and hoped as we worked

together that things would improve. No one ever reported that they were being harassed. No one reported to me that behavior and sharing of texts/photos was unwanted or unwelcome.

Anita Dunn,

Office Manager

*Attachment #4*

## RE: Alechia Reeves

## EEOC Charge No.: 493-2016-00873

**Tri-Hill Turf Care, Inc.**

C/o SPMI
Von Main St.
Von Buren AR 72956

Phone: (479) 474-7162
FAX:   (479) 922-8001

September 21, 2016

I observed during Alicia Reaves entire employment she was flirtatious with all male tech employees. I know she dated Wayne Harbour, who recommended her for an office positon. He mentioned they couldn't be physical because she had Hep C, which caused me to keep some distance from her as a precaution, as I was not familiar with how contagious that sickness was. I did have a friendly, working relationship with her, but no texting or after hour activity ever transpired during her employment. She made several comments how she would like to take me upstairs, which is the storage area. Another time in the office, and a time in the techs dressing room and have her way with me or eat me up if she could. As I had her Hep C in mind, I don't remember if I commented in any way besides unintelligible sounds as I did not want to hurt her feelings, as we were on good terms. I do remember her poking me with her finger several times on my torso and admiring how hard my sides and stomach muscles were. I observed her poke other male employees as it seemed she was happy to continue the racy office flirtation practiced by her previous office manager, who was relieved of her duty or quit, I'm not sure. Before that time, Alicia was under Jamie Byers's supervision and there was not much work exchange except explaining company procedures with turf applications and helping with turf routes. I am mostly off site managing turf and mechanical problems. After Jamie's departure, she kept things going somewhat and was not happy to train new office manager, Anita Dunn, which they soon became at odds with each other because Alicia refused to train her and opened Anita's paycheck to see how much she was making, salary wise. She was even more upset after viewing the check. Alicia had a terrible attitude and Dan Hill terminated her employment. I then became more involved in the office operations to help train the new office manager, Anita, in figuring out how to use the computer system. We never heard from her again. Anita did mention that Alicia carried many boxes out of the office and put into her car. We still are unknown of the contents.

After some time, we found out she had bought a home just around the corner of Trihill, where I would wave and at times would wave me over, coming to my window which was down, and she asked me to call her and said she was speaking to others at Trihill, and no one was mad, we should all be friends. I did not have her phone number and just said "well call me if you still have my number" and drove off. I never heard from her since then, and figured she had moved on and not pursued any claims. She did mention sometime back, she was on a pill to cure Hep C and was free to do what she wanted to. I likely said "good for you". But was still terrified of any possible transfer of Hep C or success of subscription, and never considered her as a person of interest for any social activities. I was just polite to her in any chance meeting around town. I also recall having a few talks about her and Tony Botello, a turf employee. She was asking me advice about a relationship with him and wondering if he was too young for her. I said probably not. They did spend time together after hours.

Richard Bernard

September 21, 2016

I, Wayne Harbour met Alisha Reeves at Sutherland's Lumber, she had purchased lumber and I had cut that for her. Three months later I ran into Alisha at Pic N Tote on Cavanaugh and Jenny Lind. There we developed a friendship. She invited myself along with her father to Eufala, OK for 4th of July, 2014. On July 3, 2014 I told her I was declining her invitation. She was very angry at my decision and from that point forward our friendship/professional relationship was strained at Pic N Tote and Tri-Hill.

Two or three months later, I informed her that one of the secretaries at Tri-Hill had gotten sick and there was an opening available. She decided to apply and was hired by Danny Hill. She seemed to be an excellent employee from that point on. However, after being here for about 6 months she was still having a hard time understanding the process and procedures here at Tri-Hill. She seemed so out of touch at times and under the influence of prescribed narcotics. Alisha would often be oblivious to company policy.

Alisha was obviously very insecure and jealous of Jamie Byers (former office manager) and would do anything to get the Tech's attention. On numerous occasions, Alisha patted myself on the butt without my permission and I told her it was very unprofessional. She also, showed me a picture of a fellow employee's genitals and she was very excited about it, couldn't stop talking about it. Furthermore, every chance she got she would blow anything pertaining to company business and play every Tech against one another.

One day, while in the office, Alicia showed me a picture of herself, nude, standing in the mirror while taking the picture.

Anita Dunn started in October 2015, taking Jamie's position. This made Alisha very angry and disgruntled. She hoped she would get the office manager position when Jamie was terminated but none of the Technicians believed she was capable of performing Office Management duties. Anytime Anita would draw the attention of any of the Tech's, Alisha would grow extremely agitated at her.

On several occasions, Alisha has asked me to her house to cook me dinner.

In conclusion, I believe she was very unstable due to her narcotic use for pain management. She constantly referred to her narcotic use as a way to cope with the stress of dealing with customers.

Wayne Harbour

September 21, 2016

On several occasions, when I entered the office I encountered Alicia Reeves. She would poke me in my ribs and stomach. I also had Alicia tell me that she was about to start taking medication to cure her Hep C and that she would be free to do anything with me and then she would wink at me. She always referred to me as the "cute one" to other office employees. She also asked if I could help her move on one occasion, but couldn't pay me with money, but could pay me in other ways. On a few occasions, Alicia and the office manager at that time would tell me they were going to double team me. Alicia was in the office and she was always very flirtatious with all the techs. On another occasion she told me that she would like to get me alone for one night and tear me up. In 2011, I was having a relationship with another employee. I sent that person pictures and videos of my penis. I have never sent Alicia Reeves pictures of anything. She received those pictures from the employee I was seeing at that time. Alicia often requested photos, but I never sent her any. She had relationships with a couple of the technicians that I know of. Nothing was ever said to her, by myself, that she would not consider everyday conversation with the technicians. On another occasion, Alicia grabbed me, pulled me into the hallway of the office and pressed herself up against me, face to face, and asked if I needed anything. I said no and walked away. Anita Dunn, the office manager, was a witness to the incident. I feel like Alicia Reeves is incorrect to say that she was not the aggressor. She and Jamie Byers, our former office manager, told me that I had a great ass on many occasions. She was very offensive many times and it is interesting how all the issues stopped when Alicia Reeves was let go. Alicia couldn't do her job correctly because she was so high on most occasions in the office, she could not keep her eyes open. She was terminated because she could not do her job properly. Alicia always had her prescription bottles lined up on her desk like a pharmacy.

Gary Martin

September 21, 2016

I knew Alicia, she was my neighbor. We had a friendly relationship and she is how I got my job at Tri-Hill. I would go out to dinner with her and her aunt every now and then as friends and have a drink or two. I never disrespected her in any way. She would sometimes flirt with me but I did not think anything of it. I never did anything to make her think I was interested in her. We did have a few drinks together one night.

3 weeks ago she texted me to ask if I was interested in buying a dining table. I told her yes and went over to her house to pick it up.

On September 20, 2016, she came over to my house and asked me if I had been talked to or heard anything about some naked pictures at work. I told her "I had no idea what she was talking about". She assured me that nothing involved me and not to pay attention to anything because it wasn't true.

Tony Botello

September 21, 2016

As I, Chris Cole remember the circumstances to the best of my knowledge, it started with Jamie Byers, the former office manager and I had exchanged pictures of our genitals. I came into the office and Alicia Reeves and Jamie Byers were talking about something that referred to me. I asked what they were discussing. Alicia said "those pictures on your phone of your junk". That is when she said she wanted to see them. I asked if she really wanted to see them, she said "yes". So I showed her. Sometime later, I asked her if she wanted me to send it to her, that's when she gave me her cell number and when I sent a couple of them to Alicia. I asked her at a later date if she still had the pictures, she said yes. I then asked her if she ever used them. She told me frequently. At no time did she inform me that it bothered her, she always seemed pretty cool. At no time, whether at work or away from work did I ever touch her. She would pat my ass from time to time while at work. I never saw her outside of work. I do believe I texted her a time or two at night while I was watching tv. If I sent any pictures at that time, I would have asked her if she wanted me to. At no time did I ever ask for a picture of her. Therefore, none we ever sent.

_Chris J Cole_                   9-21-16

Chris Cole



*Attachment #5*

**RE: Alechia Reeves**

**EEOC Charge No.: 493-2016-00873**

**Tri-Hill Turf Care, Inc.**



**Tri-Hill Turf Care, Inc.**

**Organizational Chart**

*Attachment #6*

**RE: Alechia Reeves**

**EEOC Charge No.: 493-2016-00873**

Tri-Hill Turf Care, Inc.
C/o SPMI
1701 Main St
Van Buren, AR 72956
Phone: (479) 474-7762
FAX: (479) 922-8001

Services Performed by :


Tri-Hill turf Inc. :  performs treatments of turf and ornamental products for management of pest and nutritional requirements on desired plants in residential and commercial landscapes.



*Attachment #7*

RE: Alechia Reeves

EEOC Charge No.: 493-2016-00873

**Tri-Hill Turf Care, Inc.**                 C/o SUMI                 Phone: (479) 474-7762
                                             1701 Main St.            FAX     (479) 924-5001
                                             Van Buren, AR 72956



Agencies    Online Services    State Directory

- *Home/*
- *About the Office/*
- *Elections/*
- *Business & Commercial Services/*
- *State Capitol Info/*
- *News/*
- *Educational Resources/*
- *Rules & Regs/*

## *1    Search Incorporations, Cooperatives, Banks and Insurance Companies*

Printer Friendly Version

LLC Member information is now confidential per Act 865 of 2007

Use your browser's back button to return to the Search Results

Begin New Search

For service of process contact the Secretary of State's office.

| | |
|---|---|
| Corporation Name | TRI-HILL TURF CARE, INCORPORATED |
| Fictitious Names | |
| Filing # | 100155743 |
| Filing Type | For Profit Corporation |
| Filed under Act | Dom Bus Corp; 958 of 1987 |
| Status | Good Standing |

| | |
|---|---|
| Principal Address | |
| Reg. Agent | DANIEL L. HILL |
| Agent Address | 3021 TOWSON AVE. |
| | FORT SMITH, AR 72901 |
| Date Filed | 02/05/1998 |
| Officers | SEE FILE, Incorporator/Organizer |
| | SHIRLEYS TAX SERVICE, Tax Preparer |
| | DANIEL LOYD HILL , President |
| | ELIZABETH A. HILL , Secretary |
| | GERALD W. HILL , Vice-President |
| | ELIZABETH A. HILL , Treasurer |
| | TRI-HILL TURF CARE, Controller |
| Foreign Name | N/A |
| Foreign Address | |
| State of Origin | N/A |

**Purchase a Certificate of Good Standing for this Entity**     **Pay Franchise Tax for this corporation**



Arkansas Secretary of State
State Capitol
500 Woodlane Street, Suite 256
Little Rock, AR 72201
501-682-1010
Google Map | Contact Us